UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRESA LEE WIEBE , <br><br>  Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>  Defendant. | Case No.   2:19-cv-01861-JDP (SS) <br><br> ORDER GRANTING CLAIMANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF No. 12 <br><br> ORDER DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT <br><br> ECF No. 15 |

Wiebe ("claimant") challenges the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income. ECF No. 1.  The case is submitted on claimant's motion for summary judgment, ECF No. 12, to which the Commissioner filed an opposition and cross-motion for summary judgment, ECF No. 15.  The matter is ripe for review, and this court now grants claimant's motion for summary judgment and denies the Commissioner's cross-motion for summary judgment.[1]

**I.     STANDARD OF REVIEW**

On appeal, this court examines whether substantial evidence supports the factual findings of the administrative law judge ("ALJ") and whether the ALJ applied the correct legal standards.

---

[1] Both parties have consented to magistrate judge jurisdiction.  ECF Nos. 7, 8.

1

*See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); 42 U.S.C. § 405(g). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). The court reviews only the reasons provided by the ALJ in the disability determination and may not affirm based on a ground upon which the ALJ did not rely. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

A motion for summary judgment may be granted only when the there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The burden of establishing that there is no genuine issue of material fact lies with the moving party. *See Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). Once the moving party has met that burden by "presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial, [Fed. R. Civ. P. 56(e)(2)] shifts to [the nonmoving party] the burden of presenting specific facts showing that such contradiction is possible." *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 950-52 (9th Cir. 1978); *see also Nissan Fire*, 210 F.3d at 1102-03.

**II.   BACKGROUND**

Claimant filed applications for disability insurance benefits and supplemental security income on December 2, and December 12, 2016, respectively, alleging disability since July 21, 2016. AR 16, 219-34. In her disability report, claimant indicated that she is disabled due to bipolar disorder, anxiety, depression, panic attacks, lupus, degenerative disc disease, fibromyalgia, chronic obstructive pulmonary disease ("COPD"), edema, and bilateral club feet. AR 247. Claimant reported that she stopped working on July 21, 2016, due to her medical conditions. AR 248. When she filed her claim, claimant had prescriptions for morphine, oxycodone, and inhalers. AR 250. Claimant is a high school graduate and reports having attended special education classes. AR 248. In the fifteen years preceding her disability claim, she was variously employed as a caretaker, clerk, retail associate, and sales associate. AR 249.

Claimant's application was denied both initially and upon reconsideration. AR 149-54, 219-34. She then requested a hearing before an ALJ. AR 165. At the hearing, which was held

on July 13, 2018, claimant and a vocational expert both testified. AR 33-70. On November 27, 2018, the ALJ issued a decision finding that claimant was not disabled and concluding that she retained the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy. AR 16-28. Claimant requested a review of the ALJ's decision. AR 216-18. The Appeals Council denied claimant's request. AR 1-6. Claimant now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c).

Claimant's administrative file includes records or reports for the relevant time period from the following health care facilities and providers: (1) Harvey Hashimoto, M.D., claimant's treating physician, AR 675-94; (2) Les Kalman, M.D., Psy.D., an examining State agency consultant, AR 697-702; (3) Shahid Ali, M.D., an examining State agency orthopedic consultant, AR 703-08; (4) Y. Rou, M.D., a non-examining State agency consultant opining on physical limitations, AR 124-25; (5) Atiya Lateef, M.D., a non-examining State agency consultant opining on physical limitations; (6) Tawnya Brode, Psy.D., and D. Funkenstein, M.D., non-examining State agency consultants opining on mental limitations, AR 98, 121-22; (7) St. Joseph's Hospital, AR 333-55; (8) Dameron Hospital, AR 356-58; (9) Valley MRI & Radiology, AR 359-60; (10) Delta Radiology Medical Group, AR 361-73; and (11) Lodi Memorial Hospital, AR 709-1309.

**III.   ANALYSIS**

An ALJ determines eligibility for Social Security benefits in a five-step sequential evaluation process, asking: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or exceed the severity of one of the impairments listed in the regulations; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018); 20 C.F.R. § 416.920. The burden of proof is on the claimant during the first four steps of the inquiry but shifts to the Commissioner at the fifth step. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f)*; see also Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

3

At step one, the ALJ found that claimant had not engaged in substantial gainful activity since July 21, 2016. AR 18. At step two, the ALJ found that claimant had the severe impairments of degenerative disc disease of the cervical and lumbar spine, lupus, chronic obstructive pulmonary disease ("COPD"), carpal tunnel syndrome, depressive disorder, and anxiety disorder. AR 18. The ALJ further found that claimant had the nonsevere impairment of fibromyalgia, noting that the record does not demonstrate "more than minimal limitations in her ability to sustain employment" as a result of the condition, "nor does it rule out the other diagnosed severe impairments as being responsible for the symptomology." AR 19. At step three, the ALJ found that claimant did not have an impairment or combination of impairments that met or exceeded the severity of any of the impairments listed in the regulations. AR 19-20. Before proceeding to step four, the ALJ found that claimant's RFC enabled claimant to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), "except she can frequently reach bilaterally; frequently handle with the right upper extremity; occasionally climb ramps and stairs, but never ladders or scaffolds; occasionally balance, stoop, kneel, crouch or crawl; never work around unprotected heights; must avoid concentrated exposure to fumes, dusts, odors, gases, poorly ventilated areas, and chemicals; is able to understand, remember, and carry out simple routine and repetitive tasks; can use judgment limited to simple work-related decisions; and occasionally interact with coworkers and public." AR 21. At step four, the ALJ found that claimant could not perform past relevant work. AR 26. At step five, the ALJ found that considering claimant's age, education, work experience, and RFC, there are jobs existing in significant numbers in the national economy that claimant can perform. AR 27.

In her motion for summary judgment, claimant argues that the ALJ conducted a legally insufficient analysis of medical opinions and rendered a decision that is not supported by substantial evidence. *See* ECF No. 12-2 at 16. In particular, claimant alleges that: (1) the ALJ provided no "good reasons" for deviations between the RFC and the opinions of medical sources, *id.* at 16; (2) the ALJ provided neither "clear and convincing reasons" nor "specific and legitimate reasons" to reject the medical opinions of treating and examining sources, *id.* at 25; and (3) the ALJ improperly relied on inconsistent daily activities to reject medical opinions, *id.* at 22-24.

In his opposition and cross-motion for summary judgment, the Commissioner responds that: (1) the ALJ alone makes an administrative finding about claimant's RFC and it "need not match any physician's opinion," ECF. No. 15-1 at 5; (2) the ALJ properly discounted the medical opinions of treating and examining sources because they opined outside of their areas of expertise, provided little rationale or analysis, were partially based on claimant's subjective and properly discounted allegations, and were not supported by claimant's submitted medical records, *see id.* at 7-8; and (3) the ALJ reasonably discounted medical opinions that were inconsistent with claimant's daily activities, *id.* at 8.

### A. RFC and Medical Opinion Analysis

A claimant's RFC is what she can still do despite her physical, mental, and other limitations. *See Mayes v. Massanari,* 276 F.3d 453, 460 (9th Cir. 2001). The ALJ's determination of a claimant's RFC must be based on medical opinions and the totality of the record. *See* 20 C.F.R. §§ 416.927(b), 416.946(c). In determining a claimant's RFC, an ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The weight given to medical opinions depends in part on whether the opinions are proffered by treating, examining, or non-examining professionals. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to become acquainted with and observe the patient as an individual. *See id.* An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Id.* The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. *See id.* at 831. Additionally, when weighing medical opinions, an ALJ is required to consider the factors laid out in 20 C.F.R. § 404.1527(c). The required factors include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the extent to which the opinion is supported by evidence, the

1  consistency of the opinion with the record as a whole, and whether the medical source is a
2  specialist.  20 C.F.R. § 404.1527(c).
3     In evaluating the three opinions of claimant's physical and mental conditions provided by
4  treating and examining sources, the ALJ assigned "little weight" to the treating physician, Dr.
5  Hashimoto, "little weight" to the opinion of one examining source, Dr. Kalman, and a mix of
6  "some weight" and "little weight" to the opinion of the remaining examining source, Dr. Ali.  AR
7  25-26.  Ultimately, the ALJ relied more heavily on the opinions of non-examining sources in
8  formulating an RFC that included fewer limitations than had been identified by the three treating
9  and examining sources.  For the reasons discussed in this opinion, the ALJ erred in rejecting Dr.
10 Hashimoto's opinion.

### a. Rejecting Treating Source Medical Opinion

12   "When the treating source has reasonable knowledge of your impairment(s), we will give
13 the source's opinion more weight than we would give it if it were from a nontreating source."  20
14 C.F.R. § 404.1527(c)(2)(ii); *see also Garrison*, 759 F.3d at 1012; *Turner v. Comm'r, Soc. Sec.*
15 *Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.
16 1987).  Generally, an ALJ should accord controlling weight to a treating doctor, where the doctor
17 utilizes medically approved diagnostic techniques to support the offered opinion, and where the
18 opinion is not inconsistent with other substantial evidence.  *See* 20 C.F.R. § 404.1527(d)(2);
19 *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017); *Lingenfelter v. Astrue*, 504 F.3d 1028,
20 1038 n.10 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir. 2007).  If a treating
21 source's opinion is not contradicted, there must be clear and convincing reasons to treat it as less
22 than controlling.  *See Lester,* 81 F.3d at 830.  If the treating source's opinion is contradicted, then
23 the ALJ must still offer specific and legitimate reasons that are supported by substantial evidence
24 for weighing other medical opinions more heavily than that of the treating source.  *See Bayliss v.*
25 *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).
26   The opinion of claimant's primary treating physician, Dr. Hashimoto, was contradicted.
27 Therefore, in order properly to reject Dr. Hashimoto's opinion, the ALJ needed to articulate
28 specific and legitimate reasons for that rejection, supported by substantial evidence in the record.

*See id*. The ALJ accorded "[l]ittle weight" to Dr. Hashimoto's opinion for three primary reasons. AR 26. First, the ALJ noted that the opinion appeared "to rest at least in part on an assessment of an impairment(s) outside the doctor's area of expertise, namely the psychological assessment." AR 26. Second, the ALJ concluded that the "checklist-style form" that had been filled out by Dr. Hashimoto "appears to have been completed as an accommodation to the claimant and includes mainly conclusions regarding functional limitations without much rationale or analysis for those conclusions." AR 26. Third, the ALJ concluded that Dr. Hashimoto's opinion was inconsistent with claimant's reported daily activities, including "attending her children's school activities, grocery shopping, doing light household chores, preparing meals, and visiting with friends." AR 26.

The ALJ erred in rejecting the opinion of claimant's treating physician. First, the ALJ erred in treating claimant's psychological ailments as existing outside the scope of Dr. Hashimoto's expertise as a family medicine practitioner. *See Holohan*, 246 F.3d at 1203 (accepting the value of a primary care physician's diagnoses of anxiety and depression). Dr. Hashimoto noted claimant's bipolar disorder and anxiety, resulting in a "marked inability to function in any stressful situation." AR 680. Anxiety is routinely diagnosed and treated by primary care physicians. *See, e.g.*, Angela Beck et al., *Behavioral Health Service Provision by Primary Care Physicians*, UNIV. OF MICH. SCHOOL OF PUBLIC HEALTH BEHAVIORAL HEALTH WORKFORCE RESEARCH CENTER (Oct. 2019). While less common than anxiety, primary care physicians frequently diagnose and manage the treatment of bipolar disorder. *See, e.g.*, Larry Culpepper, *The Diagnosis and Treatment of Bipolar Disorder: Decision-Making in Primary Care*, THE PRIMARY CARE COMPANION FOR CNS DISORDERS 16:3 (2014). Therefore, the ALJ erred in rejecting Dr. Hashimoto's opinions of claimant's psychological ailments.

Second, the ALJ erred in discounting Dr. Hashimoto's opinion on the basis that it was expressed in a "checklist-style form" that "appears to have been completed as an accommodation to the claimant" and lacked sufficient rationale in support of its conclusions. *See* AR 26. Medical opinions expressed in a checklist-style form deserve no less weight than other forms of medical opinions, particularly when coupled with treatment notes submitted as part of the administrative

record. *See Trevizo v. Berryhill*, 871 F.3d 664, 678 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments."); *see also Holohan v. Massanari*, 246 F.3d 1195, 1203 (9th Cir. 2001) (noting that the treating doctor's short "letter, in conjunction with his treatment notes, is evidence that Holohan qualified as disabled"). While the questionnaire may "have been completed as an accommodation to the claimant," Dr. Hashimoto's treatment notes provide sufficient support for the opinions expressed therein. *See* AR 373-433, 587-635.

On September 25, 2014, Dr. Hashimoto noted that claimant needed "to have lumbar surgery, possibly 2 surgeries." AR 429. On February 19, 2015, Dr. Hashimoto noted that claimant had an appointment with a spinal surgeon scheduled for the following week, that her back pain remain unchanged, and that she was experiencing "periods of hyper energetic states, decreased need for sleep," and ongoing anxiety. AR 414. On March 12, 2015, Dr. Hashimoto noted that claimant "had to go to ER 3 days ago due to accelerated low back and leg pain." AR 406. On September 10, 2015, Dr. Hashimoto noted that claimant experienced "5 days of swelling in feet, ankles, hands," "muscle spasms in arms," and "panic symptoms going to grocery store." AR 391. On January 14, 2016, Dr. Hashimoto noted that claimant still experienced "pain in the low back" after "lumbar and recently cervical spine surgery," along with numbness in both hands. AR 609.

The ALJ did not elaborate on his conclusion that Dr. Hashimoto's opinions lacked support—particularly in light of the preceding treatment notes—and it is not a specific and legitimate reason for rejecting Dr. Hashimoto's conclusions. *See Trevizo*, 871 F.3d at 677 ("Far from setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings, the ALJ pointed to nothing in [the treating physician's] treatment notes or elsewhere in the clinical record that contradicted the treating physician's opinion.") (internal quotations and citations omitted). Setting aside the fact that Dr. Hashimoto also reviewed medical records from other treating sources in arriving at his

conclusions, the notes generated during his multiple years of treating claimant provide support for the conclusions expressed in his questionnaire.

Third, the ALJ mischaracterized claimant's daily activities, which the ALJ summarily concluded were inconsistent with Dr. Hashimoto's opinion. While the ALJ noted that claimant prepared meals and performed light household chores, the record shows that claimant does not cook or clean by herself, but rather requires help. AR 52. While the record shows that claimant attempted to attend her children's school activities, it also shows that she needs help dressing and requires a chair to shower. AR 52. While the record shows that claimant was able to grocery shop occasionally, it also showed that she experienced anxiety and panic attacks when doing so. AR 391. Inconsistent daily activities may provide a specific and legitimate reason for the discounting of a medical opinion, but the ALJ did not indicate how claimant's daily activities, considered as a whole, were inconsistent with any of Dr. Hashimoto's conclusions. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (noting that a claimant is not required to be totally disabled to be eligible for benefits and that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Instead, given claimant's limitations and need for assistance in the context of the daily activities noted by the ALJ, the full record of claimant's daily activities supports the findings of Dr. Hashimoto.

In sum, the ALJ did not provide specific and legitimate reasons for rejecting Dr. Hashimoto's opinion. We cannot find such error harmless. If the treating source opinion had been accorded more weight, the ultimate nondisability determination may have changed. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination.") (internal citations and quotation marks omitted). Hence, this error requires reversal.

### IV.    CONCLUSION AND ORDER

The court need not reach the other issues raised by claimant. For the reasons stated in this opinion, the court remands this case for further consideration by the Social Security Administration. The court hereby orders that:

1. Claimant's motion for summary judgment, ECF No. 12, be granted;
2. the Commissioner's cross-motion for summary judgment, ECF No. 15, be denied;
3. the decision of the Commissioner of Social Security be reversed, and the case remanded for further proceedings; and
4. the clerk of this court enter judgment in favor of claimant Tresa Lee Wiebe and against defendant Commissioner of Social Security, and close this case.

IT IS SO ORDERED.

Dated:  December 29, 2020

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE